IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| CARLA RAWLINGS, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 2:15-cv-04051-NKL |
| ADS ALLIANCE DATA SYSTEMS, INC., | ) |
| Defendant. | ) |

**ORDER**

Plaintiff Carla Rawlings received a conditional offer of employment from Defendant ADS Alliance Data Systems, Inc. ADS withdrew the offer based on Rawlings' consumer report, and Rawlings filed this putatitive class action claiming ADS violated her rights under the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ADS moves to dismiss in whole or in part, and to strike the class allegations. [Doc. 8.] The motion is granted in part and denied in part.

**I.    Background**

Rawlings applied for work with ADS in early January 2015 and received a conditional job offer. As part of the hiring process, Rawlings signed a disclosure form that purported to notify her ADS would obtain a "consumer report," but the form "contained extraneous information[.]" [*Id.*, ¶ 19.] ADS "routinely obtains and uses information in consumer reports [as defined by the FCRA] to conduct background checks on prospective and existing employees." [*Id.*, ¶ 2.]

On January 13, 2015, Rawlings was notified she was not going to be hired due to information in her consumer report. About a week later, Rawlings received a copy of the consumer report. Rawlings alleges she was not given "a reasonable amount of time to challenge any inaccuracy that may have been present within the consumer report," nor was she given "a

written description of rights under the FCRA prior to adverse action." [*Id.*, ¶¶ 21, 35.]

Rawlings alleges ADS' "common and uniform policies and practices" violate the FCRA and that its violations are willful. [*Id.* at ¶ 47.] Specifically, she alleges ADS violated the FCRA by (1) obtaining a consumer report on her and others, but failing to provide her and others with a copy of the report and then failing to provide them with reasonable time to cure any inaccuracies in such reports; (2) obtaining a consumer report on her and others based on a disclosure form that was not on a document consisting "solely of" the disclosure and instead containing extraneous information such as state law disclosures; and (3) failing to obtain proper authorization from her and others before procuring the consumer reports. [*Id.*, ¶ 6.]

Count One is an adverse action claim under § 1681(b)(3)(A). Rawlings proposes the following class:

> **Proposed Adverse Action Class**: All employees or prospective employees of Defendant in the United States that suffered an adverse employment action on or after February 10, 2013, that was based, in whole or in part, on information contained in a consumer report, and who were not provided a copy of such report, a reasonable notice period in which to challenge any inaccuracy in the consumer report, and/or a written description of their rights in accordance with the FCRA in advance of said adverse employment action.

[*Id.*, ¶ 38.] Counts Two and Three are improper disclosure claims under § 1681b(b)(2)(A)(i) and (ii). Rawlings proposes the following class:

> **Proposed Improper Disclosure Class**: All employees or prospective employees of the Defendant in the United States who were subject of a consumer report that was sought by the Defendant on or after February 10, 2013, and who executed the Defendant's standard form to procure a consumer report.

[*Id.*, ¶ 39.] Rawlings seeks statutory damages based on ADS' alleged willful violations, as well as punitive damages, and attorney fees and costs. [*Id.*, ¶¶55-58, 63-66, and 69-72.]

2

**II. Discussion**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (internal punctuation and citation omitted). Dismissal is appropriate when "[i]t is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations." *Hinshon v. King & Spalding*, 467 U.S. 69, 73 (1984).

In considering a motion under Fed. R. Civ. P. 12(b)(6), a court must accept as true all well-pleaded allegations in the complaint. *Conley v. Gibson*, 335 U.S. 41, 45-46, 78 S. Ct. 99, 102 (1957); *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1988). In considering a motion to dismiss, a court may also consider "materials that are necessarily embraced by the pleadings." *Miller v. Redwood Toxicology Lab, Inc.*, 688 F.3d 928, 931 (8th Cir. 2012) (citations omitted). *See also* 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (3d ed. 2004) (in determining whether to grant a Rule 12(b)(6) motion, a court may consider "matters incorporated by reference or integral to the claim" without converting the motion into one for summary judgment).

    **A.    The exclusion of communications under § 1681(a)(y)(1)**

ADS argues that the report it obtained falls within a statutory exclusion from the definition of a consumer report under the FCRA:

> **(y) Exclusion of certain communications for employee investigations**
>
> > **(1) Communications described in this subsection**
> > A communication is described in this subsection if--
> >
> > > (A) but for subsection (d)(2)(D) of this section, the communication would be a consumer report;

3

> > (B) <u>the communication is made to an employer in connection with an investigation of--</u>
> >     (i) <u>suspected misconduct relating to employment; or</u>
> >     (ii) <u>compliance with Federal, State, or local laws and regulations, the rules of a self-regulatory organization, or any preexisting written policies of the employer;</u>
> > (C) the communication is not made for the purpose of investigating a consumer's credit worthiness, credit standing, or credit capacity; and
> > (D) the communication is not provided to any person except--
> >     (i) to the employer or an agent of the employer;
> >     (ii) to any Federal or State officer, agency, or department, or any officer, agency, or department of a unit of general local government;
> >     (iii) to any self-regulatory organization with regulatory authority over the activities of the employer or employee;
> >     (iv) as otherwise required by law; or
> >     (v) pursuant to section 1681f of this title.

§ 1681(a)(y)(1) (emphasis added).

The exclusion contained in subsection (y)(1) was enacted in 2003 as part of the Fair and Accurate Credit Transactions (FACT) Act. 15 U.S.C.A. §§ 1601, *et seq.* The exclusion was a response to a 1999 Federal Trade Commission Opinion Letter (referred to as the "Vail Letter"), which espoused that an attorney hired to investigate a workplace sexual harassment complaint was a consumer reporting agency for purposes of the FCRA, and the FCRA therefore applied to the investigation of an alleged harasser. Flynn, Mark J., "Detect and Deter—Performing Workplace Investigations on Behalf of Employer-Clients," 34 Colo. Law 67, *67-68 (Feb. 2005). The Vail Letter recognized no distinction between an internal workplace investigation conducted by a third party, and an employer's criminal background or credit history check of an

4

employee candidate by a third party. *Id.* The FCRA provides consumer protections regarding credit checks and backgrounds checks by employers, including the requirement that the subject applicant receive notice, give consent, and have the opportunity to review a report and identify inaccuracies. But compliance with the FCRA in the context of a complaint of discrimination conflicts with the policy of equal employment opportunity in the work place and prevention of sexual harassment. *Id.*

ADS primarily focuses on subsection (a)(y)(1)(B)(ii), involving compliance with federal law and preexisting written policies of the employer. ADS attaches to its suggestions in opposition a document titled, "Background Checks and Investigation Policy—United States," [Doc. 9-1], arguing that the document is embraced in the pleadings and may therefore be considered by the Court in ruling on ADS' motion to dismiss, without converting the motion to one for summary judgment. Assuming for the sake of argument that this policy is incorporated, the Court cannot conclude on the basis of the motion to dismiss and the record before it that the report ADS obtained is excluded from the definition of a consumer report. The policy is a general one and makes repeated references to consumer reports, is couched in the terms used in the FCRA, and describes investigation procedures that will be used, which are the same as those contained in the FCRA. Interpreting the FCRA to exclude an employer's general policy of performing background checks swallows the protections the FCRA affords applicants for employment, *see Freckleton v. Target Corp.,* 2015 WL 165293, at *6 (D. Md. Jan. 12, 2015), and is inconsistent with the policy behind the enactment of the subsection (a)(y)(1)(B)(ii) exclusion. Furthermore, if, as ADS argues, its background checks are excluded based on its need to comply with federal banking law, the record must be developed to so demonstrate. In this respect, the case cited by ADS, *Martin v. First Advantage Background Services, Corp.,* 877

5

F.Supp.2d 754 (D. Minn. 2012), is distinguishable inasmuch as *Martin* was resolved on a summary judgment record.

Accordingly, ADS' motion to dismiss Rawlings' claims in their entirety based on the § 1681(a)(y)(1) exclusion is denied.

### B. Whether Count I, based on a proposed "adverse action" class, is an improper "fail safe" class that cannot satisfy Rule 23

ADS argues in the alternative that if the Complaint is not dismissed in its entirety, then Count I must be dismissed or stricken because Rawlings proposes a fail-safe class that cannot be certified under Fed. R. Civ. P. 23.

Rule 23(a) provides:

> One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

After these four prerequisites are satisfied, the class action can be maintained only if it falls into one of three different categories set forth in Rule 23(b).

"[C]lass claims that fail to meet the requirements of Rule 23 may be properly dismissed by granting a Rule 12(b)(6) motion" prior to discovery or the filing of a motion for certification. *McCrary v. Stifel, Nicolaus & Co.*, 687 F.3d 1052, 1059 (8th Cir. 2012); *Lindsay Transmission, LLC v. Office Depot, Inc.*, 2013 WL 275568, at *4 (E.D. Mo. Jan. 24, 2013). However, "[w]here the chance exists that Rule 23 elements may be satisfied with discovery, 'the parties must be offered the opportunity to discover and present documentary evidence on the issue.'" *Lindsay*,

6

2013 WL 275568, at *4 (*quoting Walker v. World Tire Corp., Inc.*, 563 F.2d 918, 921 (8th Cir. 1977)). "'It is a rare case in which it is clear from the pleadings that the plaintiffs may not proceed as a class.'" *Sherrard v. Boeing Co.*, 2013 WL 5786642, at *3 (E.D. Mo. Oct. 28, 2013) (*quoting Ladik v. Wal-Mart Stores, Inc.*, 291 F.R.D. 263, 272 (W.D. Wis. 2013)).

ADS argues that this is one of those rare cases where the class allegations should be stricken prior to discovery, because Rawlings has proposed a fail-safe class. A fail-safe class is one in which a person's membership depends on the person having a valid claim. *Combs v. Cordish,* 2015 WL 438154, at *3 n.3 (W.D. Mo. Feb. 3, 2015). There is debate within the federal courts whether fail-safe classes are inherently problematic, and the Eighth Circuit has not yet weighed in. *See St. Louis Heart Center, Inc. v. Forest Pharmaceuticals, Inc.,* 2013 WL 1076540, at *5 (E.D. Mo. Mar. 13, 2013) (and cases cited therein). Some courts have held that fail-safe classes fail to define a certifiable class for various reasons, such as failure to define a sufficiently identifiable class; failure to meet the "commonality" and "typicality" requirements of Rule 23(a); or failure to meet the predominance requirement of Rule 23(b). *See Lindsay*, 2013 WL 275568, at *4 (compiling cases). Nonetheless, even "in the face of a fail-safe class, district courts have broad discretion to redefine the class in order to avoid issues that such class certification may present." *St. Louis Heart Center,* 2013 WL 1076540, at *5 (*citing Messner v. Northshore Univ. HealthSystem,* 669 F.3d 802 825 (7th Cir. 2102)). A district court "is not bound by a…proposed class definition." *Combs,* 2015 WL 438154, at *3 (*citing Smith v. Brown & Williamson Tobacco Corp.,* 174 F.R.D. 90, 92 n.2 (W.D. Mo. 1997)).

To dismiss Rawlings' Count I class action claim, the Court must conclude that after accepting all of Rawlings' allegations as true, no additional evidence that could be uncovered by discovery would allow the proposed class to be certified. At the current juncture, this Court

7

cannot definitely say Rawlings' Complaint makes it facially apparent that there is no ascertainable class. Rawlings alleges ADS has a common and uniform policy and practice of making adverse hiring decisions based on consumer reports without allowing the impacted applicant to view the report or correct inaccuracies. Under the FCRA, it is a violation to use a consumer report to make adverse employment actions unless the consumer to whom the report relates is given a copy of the report and a description in writing of the rights of the consumer under the FCRA. § 1681b(b)(3)(A). Even if Rawlings' proposed class is a fail-safe class, it may be possible to redefine the class at the class certification stage. At any rate, it is an issue best left until a motion for certification has been filed.

Accordingly, ADS' motion to dismiss or strike Count I is denied.

### C. Whether Count II, involving willful violation of the FCRA based on the content of the disclosure form, must be dismissed based on objective reasonableness

ADS argues Count II should be dismissed or stricken because the disclosure form it provided Rawlings is not objectively unreasonable, and Rawlings therefore cannot prove ADS willfully violated the FCRA.

It is unlawful under the FCRA to procure a consumer report for employment purposes unless

> (i) a clear and conspicuous disclosure has been made in writing to the consumer, in a document that consists solely of the disclosure, that a consumer report may be obtained for employment purposes; and (ii) the consumer has authorized in writing (which authorization may be made on the document referred to in clause (i)) the procurement of the report by that person.

15 U.S.C. §§ 1681b(b)(2)(A)(i)-(ii).

Rawlings alleges ADS' noncompliance with the FCRA was willful. *See* § 1681n(a)(1)-(3) (permitting a plaintiff to recover actual, statutory and punitive damages, and attorney fees, in

8

cases of willful noncompliance). For an FCRA violation to be "willful," a defendant must either knowingly or recklessly violate the law. *Safeco Ins. Co. of America v. Burr,* 551 U.S. 47, 57 (2007). "[A] company subject to FCRA does not act in reckless disregard of it unless the action is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Id.* at 69. Where the FCRA's language is clear, a dearth of guidance does not justify an objectively unreasonable interpretation of the statute. *Smith v. HireRight Solutions, Inc.,* 711 F. Supp. 2d 426, 436 (E.D. Pa. 2010); *Gillespie v. Equifax Info. Svs. LLC,* 2008 WL 4316950, at *6 (N.D. Ill. Sept. 15, 2008).

A defendant's willfulness must be adequately pled in the complaint for a plaintiff to sustain her cause of action. *Miller v. Quest Diagnostics*, 2:14-CV-04278-SRB, 2015 WL 545506, at *1-3 (W.D. Mo. Jan. 28, 2015) (*citing Miller–Huggins v. SpaClinic, LLC,* No. 09 C 2677, 2010 WL 963924, at *2 (N.D. Ill. March 11, 2010) ("Pursuant to *Iqbal,* plaintiff must plead factual content that allows us to draw the reasonable inference that [defendant] knowingly or recklessly [violated the FCRA].")). "[A]ssertions that [a defendant] was aware of the FCRA, but failed to comply with its requirements, are sufficient to support an allegation of willfulness and to avoid dismissal." *Id.* (*citing Singleton v. Domino's Pizza, LLC,* Civ. Act. No. DKC 11–1823, 2012 WL 245965, at *4 (D. Md. January 25, 2012)). *See also Jones v. Halstead Mgmt. Co., LLC*, 14-CV-3125 VEC, 2015 WL 366244, at *5 (S.D.N.Y. Jan. 27, 2015) (denying motion to dismiss claim that disclosure was not a proper stand-alone disclosure under the FCRA, where the disclosure contained state-specific disclosures that had nothing to do with the plaintiff's potential employment in New York; the name, address and telephone of "the nearest unit of the consumer reporting agency designated to handle inquiries regarding the investigative consumer

9

report"; time frames for challenging the result of an investigation; and "stretched what should be a simple disclosure form to two full pages of eye-straining tiny typeface writing").

Rawlings alleges that ADS' disclosure form is not a document consisting solely of the FCRA disclosure. She alleges that it included "extraneous information such as state law disclosures." [Doc. 1-1. ¶ 20.] She alleges ADS was aware of the FCRA and "knowingly used a disclosure form to obtain a consumer report on [Rawlings and other individuals] that contained extraneous information in violation of the FCRA," and that ADS' "violations of the FCRA combined with its knowledge of the requirements of the FCRA is evidence that [its] violations were willful." [Doc. 1-1, ¶¶ 7, 26, 35.]

Furthermore, the disclosure Rawlings received is part of the pleadings[1] and it is similar to the disclosure in *Jones,* in which dismissal was denied. The disclosure is a 12-page form titled "Consumer Disclosure and Authorization Form," including pages with the subheadings "Disclosure Regarding Background Investigation"; "ADDITIONAL STATE LAW NOTICES"; "Authorization of Background Information"; "A SUMMARY OF YOUR RIGHTS UNDER THE FAIR CREDIT REPORTING ACT"; "(CALIFORNIA APPLICANTS ONLY) A SUMMARY OF YOUR RIGHTS UNDER CALIFORNIA CIVIL CODCED SECTION 1786.22"; "(NEW JERSEY APPLICANTS ONLY) A Summary of Your Rights Under New Jersey's Fair Credit Reporting Act"; "(NEW YORK APPLICANTS ONLY) NEW YORK CORRECTION LAW ARTICLE 23-A[,] LICENSURE AND EMPLOYMENT OF PERSONS CONVICTED OF ONE OR MORE CRIMINAL OFFENSES"; and "(WASHINGTON

---

[1] ADS attached the Consumer Disclosure and Authorization Form signed by Rawlings as Exhibit 2 to its suggestions in support of its motion to dismiss, arguing that it is necessarily embraced by the Complaint, [Doc. 9-2], and Rawlings agrees, [Doc. 25, pp. 24 and 30].

APPLICANTS ONLY) A Summary of Your Rights Under Washington's Fair Credit Reporting Act." [*Id.*, emphasis in original.] The form also includes a chart with two columns, headed "TYPE OF BUSINESS" and "CONTACT," and nine rows, listing the addresses of federal agencies that a prospective or current employee can contact for " Information about [their] Federal rights[.]" [Doc. 9-2, pp. 7-8.] ADS cites no authority in which dismissal was granted notwithstanding inclusion in a disclosure of consumer protection laws irrelevant to the plaintiff.

In this context and at the motion to dismiss stage, the Court finds Rawlings' complaint is sufficient to state a claim that ADS violated the FCRA's stand-alone disclosure requirement. Accordingly, ADS' motion to dismiss or strike Count II is denied.

### D. Whether Count III, involving failure to obtain proper authorization under § 1681(b)(2)(A)(ii), must be dismissed for failure to plead sufficient facts

Finally, ADS argues Rawlings fails to allege any facts consistent with willful violation of the FCRA under Count III, because Rawlings merely alleges her consumer report was obtained without proper authorization, and the Count should therefore be dismissed. As noted above, the FCRA provides that a consumer report may not be obtained for employment purposes unless "the consumer has authorized in writing ... the procurement of the report by that person." § 1681b(b)(2)(A).

The authorization form Rawlings signed is part of the pleadings. The form provides that a background report will be prepared by "a consumer reporting agency such as HireRight, Inc.," and that the authorization suffices to permit the company to perform additional background checks throughout the applicant's period of employment "from HireRight and/or other consumer reporting agencies." [Doc. 9-2, p. 5.] A reasonable person would be on notice that the background report being obtained by the consumer reporting agency is in the nature of a

11

consumer report.  The form, signed by Rawlings, satisfies ADS' obligation to obtain authorization to procure a consumer report.

ADS' motion to dismiss Count III is granted.

**III.    Conclusion**

Defendant ADS' motion to dismiss and to strike [Doc. 8] is granted in part and denied in part.  Specifically, Count III is dismissed.  The remainder of ADS' motion is denied.


                                                                s/ Nanette K. Laughrey
                                                                NANETTE K. LAUGHREY
                                                                United States District Judge

Dated:   June 23, 2015
Jefferson City, Missouri